**UNITED STATES PATENT AND TRADEMARK OFFICE**
**BEFORE THE DIRECTOR OF THE**
**UNITED STATES PATENT AND TRADEMARK OFFICE**

| | |
|---|---|
| In the Matter of ) | |
| ) | |
| Angus F. Ni, ) | Proceeding No. D2024-20 |
| ) | |
| Respondent ) | |
| ———————————————) | |

**FINAL ORDER**

The Director of the Office of Enrollment and Discipline ("OED Director") for the United

States Patent and Trademark Office ("USPTO" or "Office") and Angus Ni ("Respondent") have

submitted a Proposed Settlement Agreement ("Agreement") to the Under Secretary of Commerce

for Intellectual Property and Director of the United States Patent and Trademark Office ("USPTO

Director") for approval.

The Agreement, which resolves all disciplinary action by the USPTO arising from the joint

stipulated facts set forth below, is hereby approved. This Final Order sets forth the parties'

stipulated facts, legal conclusions, and sanctions.

**Jurisdiction**

1. At all times relevant hereto, Respondent of Seattle, Washington, was an attorney admitted

to practice in the State of Washington, currently in good standing, and admitted to practice in the

State of New York, currently in good standing. Respondent, at all times relevant to this matter,

was engaged in practice before the Office in trademark matters. Respondent is authorized to

practice before the USPTO in trademark matters. *See* 5 U.S.C. § 500(b); 37 C.F.R. § 11.14(a).

Respondent is subject to the USPTO Rules of Professional Conduct, 37 C.F.R. § 11.101 *et seq*.

2. The USPTO Director has jurisdiction over this matter pursuant to 35 U.S.C. §§ 2(b)(2)(D) and 32 and 37 C.F.R. §§ 11.19, 11.20, and 11.26.

**Joint Stipulated Facts**

3. Shortly after beginning a solo practice in mid-2019, Respondent was solicited by numerous foreign entities seeking U.S. counsel for trademark filings. Prior to these solicitations, Respondent had not practiced in the field of trademark law.

4. Respondent informed OED that, after investigating the area of trademark prosecution, he determined that quality U.S. trademark applications could be produced and filed "at scale." He chose a single intellectual property service provider referring partner: Shenzhen Cadmon Intellectual Property Co., Ltd. ("SCIP") ("深圳凯德盟知识产权有限公司") of Shenzhen, Guangdong, China, who he believed would adhere to his standards and instructions.

5. Respondent explained to OED that he developed, in conjunction with SCIP, a trademark registration application process covering intake, evidence gathering, and filing. He represents that he then trained SCIP's non-lawyer assistants to perform client intake and evidence gathering work, as well as document filing, using this process.

6. Respondent's process involved SCIP personnel drafting and filing new trademark applications with the USPTO often with Respondent's review being limited to approval of submitted specimens and evidence of use in commerce. Specifically, SCIP personnel would gather information and evidence from clients, draft trademark applications, and submit specimens to Respondent for his review via a shared folder. Respondent would typically review the submitted specimens but would not review the prepared application as a whole.

7. Respondent informed OED that he would, at times, allow applications to be filed without reviewing the submitted specimen (for example, when the same applicant submitted multiple

specimens for multiple marks, and one set of specimens had already been reviewed and found to be appropriate). In these instances, the application was drafted, reviewed, and filed without his interaction.

8. Respondent represents that, at the beginning of his relationship with SCIP, he reviewed all incoming Office actions and communicated with SCIP about how to respond to them. However, as Respondent's practice developed and his confidence in SCIP personnel's ability to evaluate incoming correspondence grew, he explained that he ultimately ceased reviewing the majority of incoming correspondence from the USPTO. Rather, Respondent explained that, to the extent SCIP personnel judged that certain USPTO correspondence required Respondent's attention, SCIP escalated the correspondence to Respondent for his input.

9. In this manner, Respondent allowed SCIP personnel to evaluate incoming USPTO correspondence and refrain from escalating certain matters to him. Thus, in certain circumstances, Respondent enabled SCIP personnel to report, draft, and file substantive Office action responses without his interaction.

10. Respondent represents that he allowed SCIP to proceed without his involvement in matters that, in his opinion, did not involve evidence or required little or no analysis. Respondent had the ability to access incoming correspondence from the USPTO, and he acknowledges that his process relied on non-lawyers at SCIP reviewing incoming correspondence and making the determination as to whether he should be involved in an ultimate response to the USPTO.

11. Contrary to the unambiguous language of 37 C.F.R. § 2.193 and Trademark Manual of Examining Procedure ("TMEP") § 611.01(c) requiring that a person signing a document must personally enter the characters that the signer has adopted as their signature, Respondent allowed SCIP personnel to sign his name to filings made with the USPTO, including declarations

appurtenant to a mark's use in commerce. Respondent did not review all of the available resources providing clear guidance that doing so was improper.

12.    When informed by the USPTO that allowing others to enter his signature was improper, Respondent took action to ensure that only the named signatory entered signatures on documents filed with the USPTO.

13.    With respect to improper signatures that Respondent allowed to be filed with the USPTO, he represents that he did not delegate signatory authority with intent to make any misrepresentation in trademark filings. Respondent represents that he incorrectly interpreted that the relevant regulation's (37 C.F.R. § 2.193) acceptance of electronic signatures, permission to file "a copy of an original signature" in lieu of the original, and ability of an applicant's representative to make averments appurtenant to a new trademark application, meant that final submissions to the USPTO did not need to be signed personally. Respondent represents that he now recognizes that the delegation of signatory authority resulted in a misrepresentation of the identity of the signer, and that the practice raises risks of, *inter alia*, inaccurate submissions, regardless of the underlying process. Respondent represents that he now recognizes that 37 C.F.R. § 2.193 and TMEP 611.01(c) require the person(s) identified as the signatory to personally sign the printed form or personally enter the signatory's electronic signature, either directly on the trademark electronic filing system's form or in the emailed form. He also represents that he now understands that with respect to documents filed with the USPTO in trademark matters, (a) a person may not delegate their authority to sign, and no person may sign or enter the name of another; (b) just as signing the name of another person on paper does not serve as the signature of the person whose name is written, typing the electronic signature of another person is not a valid signature by that person; and (c) another person may not use document-signing software to create or generate the electronic

signature of the named signatory, regardless of the level or type of diligence or process implemented leading up to that signature.

14.    Noting his obligations to his clients under 37 C.F.R. § 11.104, Respondent notified the USPTO that he has informed clients of the improper signatures and the potential for adverse consequences to their trademark applications or any registration resulting therefrom.

15.    The USPTO has published ample, readily available information for practitioners regarding what is competent practice before the Office in trademark matters. In particular, the agency maintains a webpage regarding important trademark information including specific links to relevant laws, rules, regulations, and rulemaking. (*Available at* www.uspto.gov/trademarks)

16.    The agency publishes online and regularly updates its Trademark Manual of Examining Procedure (*Available at* tmep.uspto.gov/RDMS/TMEP/current). The TMEP is a guidance document that provides trademark practitioners, *inter alia*, with a reference work on the practices and procedures relative to prosecution of applications to register marks in the USPTO. 37 C.F.R. § 2.193 and TMEP 611.01(c) require the person(s) identified as the signatory to personally sign the printed form or personally enter the signatory's electronic signature, either directly on the trademark electronic filing system's form or in the emailed form. TMEP 611.01(c) also provides that (a) a person may not delegate their authority to sign, and no person may sign or enter the name of another (*See In re Zhang*, 2021 TTAB LEXIS 465, at *10, *13 (Dir USPTO 2021) (sanctions); *In re Dermahose Inc.*, Ser. No. 76585901, 2007 TTAB LEXIS 25, at *9 (2007); *In re Cowan*, Reg. No. 1225389, 1990 Commr. Pat. LEXIS 24, at *6 (Comm'r Pats. 1990)); (b) just as signing the name of another person on paper does not serve as the signature of the person whose name is written, typing the electronic signature of another person is not a valid signature by that person; and (c) another person may not use document-signing software to create

or generate the electronic signature of the named signatory. When trademark filings are

impermissibly signed and filed with the USPTO, the integrity of the federal trademark

registration process is adversely affected. Therefore, practitioners who represent applicants,

registrants, or others before the USPTO in trademark matters — including those who serve as

U.S. counsel for foreign-domiciled clients — are reasonably expected to know (a) the laws,

rules, regulations, and procedures pertaining to their representation of their trademark clients,

and (b) the potential adverse consequences to clients' intellectual property rights in trademark

applications and registrations as well as to the integrity of the U.S. trademark registration system

when such laws, rules, regulations, or procedures are violated.

17.     The USPTO has also published ample information about the U.S. Counsel Rule.

*See*, *e.g.*, *Requirement of U.S. Licensed Attorney for Foreign Trademark Applicants and

Registrants*, 84 FR 31498 (Final Rule) (July 2, 2019); 37 C.F.R. § 2.11 (Requirement for

representation); TMEP § 601. There is also ample, readily-available information for practitioners

regarding what is ethical practice before the Office in trademark matters. For example, the

USPTO's searchable OED FOIA webpage (*available at* https://foiadocuments.uspto.gov/oed)

instantaneously lists dozens of cases when the search word "signature" is entered in the search

field.

18.     Practitioners who represent applicants, registrants, or others before the USPTO in

trademark matters — including those who serve as U.S. counsel for foreign-domiciled clients —

are reasonably expected to know (a) the applicable trademark prosecution rules, (b) the

provisions of the USPTO Rules of Professional Conduct implicated by such representation, and

(c) the potential disciplinary consequences when such provisions of the USPTO Rules of

Professional Conduct are violated. The USPTO Director has issued numerous orders imposing

discipline on trademark practitioners who violated the USPTO Rules of Professional Conduct based on not complying with USPTO trademark signature rules, not adequately supervising non-attorney assistants, and/or not fulfilling obligations under 37 CFR § 11.18 to conduct an inquiry reasonable under the circumstances in support of factual assertions made in trademark documents presented to the USPTO.

19.     The practice of law before the USPTO, whether in patents, trademarks, or otherwise, involves a fiduciary relationship between the practitioner and their client. As such, while the incorporation of efficiencies and quality control mechanisms into a legal practice may be good business practices, efforts to commodify and produce work product at high volumes using non-practitioner assistants may pose ethical pitfalls. Thus, practitioners must always give full attention to their fiduciary responsibilities when structuring their business processes and must ensure that such processes do not supplant such fiduciary obligations to clients.

### Additional Considerations

20.     Respondent has never been the subject of professional discipline by the USPTO, and he represents that he has not been subject to discipline by any court, or any state bar.

21.     Respondent has acknowledged his ethical lapses, demonstrated genuine contrition, and accepted responsibility for his acts and omissions.

22.     Respondent has informed the Deputy Commissioner for Trademark Examination Policy of the improper signatures and provided an itemized list of the associated filings.

23.     Respondent cooperated with OED's investigation, *e.g.*, by agreeing to an online interview with OED and by providing timely, candid, and non-evasive responses to requests for information.

24.    Respondent now understands and acknowledges that (a) the USPTO trademark signature rule requiring the named signatory to enter his or her signature on a trademark document to be presented to the Office is a substantive rule, not a technical requirement, and (b) a failure of the named signatory to enter his or her signature on a trademark document potentially adversely affects trademark applicants' and trademark registrants' intellectual property rights as well as the integrity of the USPTO trademark registration process.

**Joint Legal Conclusions**

25.    Respondent acknowledges that, based on the information contained in the joint stipulated facts and notwithstanding his representations, above, that Respondent's acts and omissions violated the following provisions of the USPTO Rules of Professional Conduct:

a)    37 C.F.R. § 11.101 (a practitioner shall provide competent representation) by, *inter alia*, (1) not understanding the USPTO trademark signature rules, which require that only the named signatory can sign a trademark document as set forth in TMEP § 611.01(c), (2) failing to review all trademark applications and other trademark documents prepared and filed by SCIP personnel before they were filed, (3) authorizing non-attorney assistants to enter his signature on trademark documents filed with the USPTO, and (4) failing to consider readily available information concerning the propriety of delegating another to sign his name to a document filed with the USPTO in trademark matters;

b)    37 C.F.R. § 11.103 (not acting with reasonable diligence) by, *inter alia*, (1) failing to ensure that filings were in compliance with all USPTO regulations, (2) failing to review all trademark documents on which he was the attorney of record—including applications and responses to Office actions—that were drafted by non-attorney assistants prior to the documents being filed with the USPTO; (3) authorizing non-attorney assistants to enter his signature on trademark documents filed with the USPTO; (4) for those trademark applications that he did not review prior to filing, submitting declarations to the USPTO in trademark applications without conducting a reasonable inquiry into the veracity of the averments made appurtenant thereto, wherein said declarations are relied upon by Trademark Examining Attorneys in the course of evaluating trademark applications; and (5) failing to consider readily available information concerning the propriety of delegating another to sign his name to a document filed with the USPTO in trademark matters;

c) 37 C.F.R. § 11.303(a)(1) (knowingly making a false statement of fact or law to the tribunal or failing to correct a false statement of material fact or law to the tribunal by the practitioner) and § 11.303(d) (in an *ex parte* proceeding, not informing the tribunal of all material facts known to the practitioner that will enable the tribunal to make an informed decision, whether or not the facts are adverse) by, *inter alia*, knowingly allowing many trademark documents, including declarations, to be presented to the USPTO knowing that the documents were not signed by the named signatory identified on the document;

d) 37 C.F.R. § 11.503(a) (failing to take reasonable efforts to ensure that non-attorney assistants' conduct is compatible with the professional obligations of the practitioner) by, *inter alia*, (1) allowing non-attorney assistants to prepare and file trademark applications and other documents with the USPTO on behalf of his clients without always reviewing such documents, and (2) authorizing non-attorney assistants to enter his signature on certain trademark documents filed with the USPTO;

e) 37 C.F.R. § 11.505 (assisting in the unauthorized practice of law) by, *inter alia*, establishing a process that at times allowed non-attorney assistants to prepare, sign, and file trademark documents on which he was identified as the attorney of record without his review or without his substantive involvement prior to filing;

f) 37 C.F.R. § 11.804(c) (engaging in conduct involving misrepresentation) by, *inter alia* (1) allowing many trademark documents, including declarations, to be presented to the USPTO where the documents were not signed by the named signatory identified on the document, and (2) in trademark applications that he did not review prior to filing, submitting declarations to the USPTO in trademark applications without conducting a reasonable inquiry into the veracity of the averments made appurtenant thereto, wherein said declarations are relied upon by Trademark Examining Attorneys in the course of evaluating trademark applications; and

g) 37 C.F.R. § 11.804(d) (engaging in conduct that is prejudicial to the integrity of the trademark system) by, *inter alia*, (1) enabling and authorizing non-attorney assistants to, at times, file trademark applications and other trademark-related documents on which he was identified as the attorney of record without his review or without his substantive involvement prior to filing, and (2) enabling and authorizing non-attorney assistants to enter his signature on trademark documents filed with the USPTO, including declarations.

### Agreed-Upon Sanction

26. Respondent freely and voluntarily agrees, and it is hereby ORDERED that:

a. Respondent is suspended from practice before the Office for a period of five (5) months;

b. Respondent is to remain suspended from practice before the USPTO until the OED

Director grants a petition requesting Respondent's reinstatement pursuant to 37 C.F.R. § 11.60;

c.  Respondent shall comply fully with 37 C.F.R. § 11.58;

d.  Respondent may satisfy his obligations under 37 C.F.R. § 11.58(c)(3)(i) for those clients

who are domiciled in a foreign country and have immediate or prospective business

before the Office in patent, trademark, or other non-patent matters (*e.g.*, trademark

applicants, parties before the USPTO Trademark Trial and Appeal Board, patent

applicants, parties before the USPTO Patent Trial and Appeal Board) by emailing, in the

client's native language, the requisite 37 C.F.R. § 11.58 notices and information

(including a copy of the Final Order that has been correctly translated into the client's

native language) to:

1.  The email address for each client and, if applicable, the email address as

set forth in the "Applicant's Information" portion of each client's

trademark application, but only if such email address is an email address

belonging to the client and one that Respondent reasonably believes to

which the client has direct access (*i.e.,* not the email address belonging

to a foreign referring entity);

2.  An email address belonging to the client and one that Respondent

reasonably believes to which the client has direct access (*i.e.,* not the

email address belonging to a foreign-domiciled third person or a foreign

domiciled entity who referred the matter to Respondent); or

3.  The foreign-domiciled third person or a foreign-domiciled entity who

referred the matter to Respondent, but only if:

A. Respondent takes reasonable measures to ensure that the foreign-domiciled third person or a foreign-domiciled entity thereafter promptly forwards Respondent's email to the client with the translated Final Order attached and Respondent is copied on the forwarded email;

B. Respondent takes reasonable measures to learn from the foreign-domiciled third person or a foreign-domiciled entity that the client actually received the Respondent's email and translated Final Order forwarded to the client;

C. Respondent's affidavit submitted pursuant to 37 C.F.R. § 11.58(d) sets forth the details of his reasonable measures that are required by subparagraphs (3)(A) and (B) immediately above; and

D. Any petition for reinstatement filed by or on behalf of Respondent sets forth the details of his reasonable measures that are required by subparagraphs (3)(A) and (B) immediately above;

e. Respondent shall be granted limited recognition pursuant to 37 C.F.R. § 11.58(f) for thirty (30) days starting on the date of the Final Order approving this Agreement so that Respondent may endeavor to conclude work on behalf of clients on any matters pending before the Office and, if such work cannot be concluded within such thirty (30) days, Respondent shall so advise each such client so that the client may make other arrangements;

f. Effective the date of the expiration of the 30-day period of limited recognition afforded to Respondent under 37 C.F.R. § 11.58(f), the USPTO is hereby authorized to disable or suspend any USPTO.gov accounts registered to Respondent as of the date of the Final Order (including,

but not limited to, all accounts that Respondent has ever established, sponsored, used in connection with any trademark matter);

g. Respondent shall not apply for a USPTO verified Electronic System account, shall not obtain a USPTO verified Electronic System account, nor shall he have his name added to a USPTO verified Electronic System account, unless and until he is reinstated to practice before the USPTO;

h. Immediately upon expiration of the 30-day period of limited recognition afforded to Respondent under § 11.58(f), Respondent is prohibited from using, assessing, or assisting others in using or accessing any USPTO.gov account(s) or other USPTO filing systems for preparing or filing documents with the USPTO;

i. Until a petition seeking Respondent's reinstatement to practice before the USPTO is granted pursuant to 37 C.F.R. § 11.60, Respondent shall be prohibited, and the USPTO is authorized to disallow Respondent, from the following: (1) opening or activating any USPTO.gov account(s) to be used for preparing or filing documents with the USPTO; (2) applying for, or attempting to apply for any USPTO.gov account(s) to be used for preparing or filing documents with the USPTO; (3) verifying, or attempting to verify, any other person's credentials in connection with USPTO.gov account(s) to be used for preparing or filing documents with the USPTO; and (4) sponsoring or attempting to sponsor USPTO.gov account(s) to be used for preparing or filing documents with the USPTO;

j. Nothing herein shall obligate the USPTO to take action, *sua sponte*, to re-activate any USPTO.gov account disabled or suspended pursuant to this order; rather, it is Respondent's sole responsibility to initiate any such re-activation of any such USPTO.gov account;

k. Respondent shall cooperate fully with the USPTO in any present or future USPTO inquiry made into improper filings by (1) SCIP, any of its officers, employees or employers, and (2) any other person or entity with whom Respondent worked in connection with trademark documents submitted to the USPTO;

l. Respondent shall serve a probationary period that commences on the date the Final Order is signed and terminates either (i) eighteen (18) months after a decision by the OED Director granting a petition seeking Respondent's reinstatement to practice before the USPTO or (ii) twenty-four (24) months after the date the Final Order is signed if a petition seeking Respondent's reinstatement is not filed within twenty-four (24) months of the date the Final Order is signed;

m.      (1) If the OED Director is of the good faith opinion that Respondent, during Respondent's probationary period, failed to comply with any provision of the Final Order (including compliance with 37 C.F.R. § 11.58) or any provision of the USPTO Rules of Professional Conduct, the OED Director shall:

> (A) issue to Respondent an Order to Show Cause why the USPTO Director should not enter an order immediately suspending the Respondent for up to an additional twelve (12) months for the violations set forth in the Joint Legal Conclusions, above;

> (B) send the Order to Show Cause to Respondent at the last address of record Respondent furnished to the OED Director;

> (C) grant Respondent fifteen (15) days to respond to the Order to Show Cause; and

(2) in the event that after the 15-day period for response and consideration of the response, if any, received from Respondent, the OED Director continues to be of the opinion that Respondent, during Respondent's probationary period, failed to comply with any provision of the Final Order (including compliance with 37 C.F.R. § 11.58) or any provision of the USPTO Rules of Professional Conduct, the OED Director shall:

> (A) deliver to the USPTO Director: (i) the Order to Show Cause; (ii) Respondent's response to the Order to Show Cause, if any; and (iii) argument and evidence supporting the OED Director's position; and

> (B) request that the USPTO Director enter an order immediately suspending Respondent for up to an additional twelve (12) months for the violations set forth in the Joint Legal Conclusions above;

n. Nothing herein shall prevent the OED Director from seeking discrete discipline for any misconduct that formed the basis for an Order to Show Cause issued pursuant to the preceding subparagraph;

o. In the event the Respondent seeks a review of any action taken pursuant to subparagraph m., above, such review shall not operate to postpone or otherwise hold in abeyance the suspension;

p. While Respondent is on probation, Respondent shall, at least on a bi-weekly basis, (i) search the USPTO's online trademark search system (currently located at https://tmsearch.uspto.gov/search/search-information) for applications identifying him as the attorney of record; and (ii) promptly inform in writing the USPTO Office of Trademark Examination Policy of each trademark document filing identifying him as the attorney of record that was made without his knowledge or consent;

q. While Respondent is on probation, Respondent shall, at least on a quarterly basis, submit a written report to the OED Director stating that he has completed the bi-weekly searches of the USPTO's online trademark search system database, and, as applicable, (i) stating that he identified no applications or other trademark filing in which he was named as the attorney of record that were not made by him or without his knowledge and consent; or (ii) providing copies of correspondence sent to the USPTO Office of Trademark Examination Policy as described in the preceding subparagraph;

r. As a condition of being reinstated to practice before the USPTO, Respondent shall provide to the OED Director a declaration, affidavit, or statement in compliance with 28 U.S.C. § 1746 signed by Respondent stating that he has successfully completed six (6) hours of continuing legal education credit on legal ethics;

s. As a condition of being reinstated, Respondent shall provide to the OED Director a declaration, affidavit, or statement in compliance with 28 U.S.C. § 1746 signed by Respondent stating that he has reviewed thoroughly all provisions of the Trademark Manual of Examining Procedure, including but not limited to, the provisions of the USPTO's signature requirements;

t. As a condition of his probation, prior to the end of his probationary period, Respondent shall:

> (1) enroll in and virtually attend completely each of the eight modules comprising the USPTO's Trademark Basics Boot Camp (located on the USPTO website at https://www.uspto.gov/about-us/events/trademark-basics-boot-camp); and
>
> (2) provide to the OED Director a declaration, affidavit, or statement in compliance with 28 U.S.C. § 1746 signed by Respondent stating that he has done so;

u. Nothing in the Final Order shall prevent the Office from considering the record of this disciplinary proceeding, including the Final Order: (1) when addressing any further complaint or evidence of similar misconduct concerning Respondent brought to the attention of the Office; and/or (2) in any future disciplinary proceeding against Respondent (i) as an aggravating factor to be taken into consideration in determining any discipline to be imposed, and/or (ii) to rebut any statement or representation by or on Respondent's behalf; and/or (3) in connection with any request for reconsideration submitted by Respondent pursuant to 37 C.F.R. § 11.60;

v. The OED Director electronically publish the Final Order publicly including at the OED's electronic FOIA Reading Room, which is publicly accessible through the Office's website at: https://foiadocuments.uspto.gov/oed/;

w.    The OED Director shall publish a notice publicly including in the Official Gazette that is materially consistent with the following:

### Notice of Suspension and Probation

This notice concerns Mr. Angus Ni of Seattle, Washington. Mr. Ni is an attorney licensed in the States of Washington and New York who engaged in practice before the United States Patent and Trademark Office ("USPTO" or "Office") in trademark matters. The USPTO Director has suspended Mr. Ni from practice before the Office for a period of five (5) months and placed him on probation for violating 37 C.F.R. §§ 11.101; 11.103; 11.303(a)(1); 11.303(d); 11.503(a); 11.505; 11.804(c); and 11.804(d) of the USPTO Rules of Professional Conduct.

Mr. Ni established a U.S. trademark prosecution practice in conjunction with Shenzhen Cadmon Intellectual Property Co., Ltd. ("SCIP") ("深圳凯德盟知识产权有限公司"), of Shenzhen, Guangdong, China, wherein non-lawyer personnel from SCIP were allowed to prepare and file U.S. trademark applications and Office action responses with the USPTO without review by Mr.

Ni. He also allowed SCIP personnel to sign his name to documents filed with the USPTO, including declarations appurtenant to new trademark applications.

Mr. Ni has not been previously disciplined by the USPTO, and he represents that he has never been the subject of professional discipline by any court or state bar.

The USPTO has published ample, readily available information for practitioners regarding what is competent practice before the Office in trademark matters. In particular, the agency maintains a webpage regarding important trademark information including specific links to relevant laws, rules, regulations, and rulemaking. (*Available at* www.uspto.gov/trademarks)

The agency publishes online and regularly updates its Trademark Manual of Examining Procedure ("TMEP") (*Available at* tmep.uspto.gov/RDMS/TMEP/current). The TMEP is a guidance document that provides trademark practitioners, *inter alia*, with a reference work on the practices and procedures relative to prosecution of applications to register marks in the USPTO. The TMEP provides unambiguous information about the agency's signature requirements at TMEP § 611.01(c). 37 C.F.R. § 2.193 and TMEP 611.01(c) require the person(s) identified as the signatory to personally sign the printed form or personally enter the signatory's electronic signature, either directly on the trademark electronic filing system's form or in the emailed form. TMEP 611.01(c) also provides that (a) a person may not delegate their authority to sign, and no person may sign or enter the name of another (*See In re Zhang*, 2021 TTAB LEXIS 465, at *10, *13 (Dir USPTO 2021) (sanctions); *In re Dermahose Inc.*, Ser. No. 76585901, 2007 TTAB LEXIS 25, at *9 (2007); *In re Cowan*, Reg. No. 1225389, 1990 Commr. Pat. LEXIS 24, at *6 (Comm'r Pats. 1990)); (b) just as signing the name of another person on paper does not serve as the signature of the person whose name is written, typing the electronic signature of another person is not a valid signature by that person; and (c) another person may not use document-signing software to create or generate the electronic signature of the named signatory. When trademark filings are impermissibly signed and filed with the USPTO, the integrity of the federal trademark registration process is adversely affected. Therefore, practitioners who represent applicants, registrants, or others before the USPTO in trademark matters — including those who serve as U.S. counsel for foreign-domiciled clients — are reasonably expected to know (a) the laws, rules, regulations, and procedures pertaining to their representation of their trademark clients, and (b) the potential adverse consequences to clients' intellectual property rights in trademark applications and registrations as well as to the integrity of the U.S. trademark registration system when such laws, rules, regulations, or procedures are violated.

The USPTO has also published ample information about the U.S. Counsel Rule. *See, e.g.*, *Requirement of U.S. Licensed Attorney for Foreign Trademark Applicants and Registrants*, 84 FR 31498 (Final Rule) (July 2, 2019); 37 C.F.R. § 2.11 (Requirement for representation); TMEP § 601. There is also ample,

readily-available information for practitioners regarding what is ethical practice before the Office in trademark matters. For example, the USPTO's searchable OED FOIA webpage (found at https://foiadocuments.uspto.gov/oed) instantaneously lists dozens of cases when the search word "signature" is entered in the search field.

Therefore, practitioners who represent applicants, registrants, or others before the USPTO in trademark matters — including those who serve as U.S. counsel for foreign-domiciled clients — are reasonably expected to know (a) the applicable trademark prosecutions rules, (b) the provisions of the USPTO Rules of Professional Conduct implicated by such representation, and (c) the potential disciplinary consequences when such provisions of the USPTO Rules of Professional Conduct are violated. The USPTO Director has issued numerous orders imposing discipline on trademark practitioners who violated the USPTO Rules of Professional Conduct based on not complying with USPTO trademark signature rules, not adequately supervising non-attorney assistants, and/or not fulfilling obligations under 37 CFR § 11.18 to conduct an inquiry reasonable under the circumstances in support of factual assertions made in trademark documents presented to the USPTO, including:

*In re Swyers*, Proceeding No. D2016-20 (USPTO Jan. 26, 2017)
*In re Meikle*, Proceeding No. D2019-17 (USPTO Mar. 21, 2019)
*In re Crabtree*, Proceeding Nos. D2018-31 & -47 (USPTO Apr. 25, 2019)
*In re Sapp*, Proceeding No. D2019-31 (USPTO May 15, 2019)
*In re Sweeney*, Proceeding No. D2019-33 (USPTO June 19, 2019)
*In re Mar*, Proceeding No. D2019-11 (USPTO Aug. 2, 2019)
*In re Rajan*, Proceeding No. D2019-30 (USPTO Sep. 5, 2019)
*In re Caraco*, Proceeding No. D2019-50 (USPTO Sep. 12, 2019)
*In re Caldwell, II*, Proceeding No. D2020-12 (USPTO Mar. 17, 2020)
*In re Bashtanyk*, Proceeding No. D2020-09 (USPTO Apr. 17, 2020)
*In re Lou*, Proceeding No. D2021-04 (USPTO May 12, 2021)
*In re Mincov*, Proceeding No. D2020-30 (USPTO Aug. 23, 2021)
*In re Reddy*, Proceeding No. D2021-13 (USPTO Sep. 9, 2021)
*In re David*, Proceeding No. D2021-08 (USPTO Sep. 24, 2021)
*In re Di Li*, Proceeding No. D2021-16 (USPTO Oct. 7, 2021)
*In re Hom*, Proceeding No. D2021-10 (USPTO Dec. 17, 2021)
*In re Yang*, Proceeding No. D2021-11 (USPTO Dec. 17, 2021)
*In re Pasquine*, Proceeding No. D2019-39 (USPTO Mar. 28, 2022)
*In re Wan*, Proceeding No. D2022-04 (USPTO Apr. 1, 2022)
*In re Hao*, Proceeding No. D2021-14 (USPTO Apr. 27, 2022)
*In re Zhang*, Proceeding No. D2022-16 (USPTO July 11, 2022)
*In re Daoyou Tim Liu*, Proceeding No. D2022-03 (USPTO Aug. 9, 2022)
*In re Han*, Proceeding No. D2022-23 (USPTO Jan. 6, 2023)
*In re Song*, Proceeding No. D2023-10 (USPTO May 1, 2023)
*In re Gallagher*, Proceeding No. D2023-08 (USPTO June 23, 2023)
*In re Jabbour,* Proceeding No. D2023-33 (USPTO Sep. 6, 2023)

*In re Wang,* Proceeding No. D2023-38 (USPTO Nov. 21, 2023)
*In re Niu,* Proceeding No. D2023-32 (USPTO Jan. 3, 2024)
*In re Huang*, Proceeding No. D2023-37 (USPTO Jan. 8, 2024)
*In re Bethel,* Proceeding No. D2019-42 (USPTO Jan. 27, 2024)
*In re Koh,* Proceeding No. D2024-07 (USPTO Feb. 7, 2024)
*In re Che-Yang Chen,* Proceeding No. D2024-01 (USPTO Mar. 20, 2024)
*In re Haffner,* Proceeding No. D2023-35 (USPTO May 21, 2024)
*In re Oldham,* Proceeding No. D2024-11 (USPTO May 29, 2024)
*In re Harper,* Proceeding Nos. D2020-10 and D2024-15 (USPTO Aug. 13, 2024)
*In re Yu,* Proceeding No. D2024-24 (USPTO Aug. 20, 2024)
*In re Khalsa,* Proceeding No. D2019-38 (USPTO Sep. 5, 2024)
*In re Weitao Chen,* Proceeding No. D2024-21 (USPTO Sep. 11, 2024)
*In re Campbell,* Proceeding No. D2019-41 (USPTO Oct. 10, 2024)
*In re Jie Luo,* Proceeding No. D2024-02 (USPTO Oct. 25, 2024)
*In re Qinghe Liu*, Proceeding No. D2023-39 (USPTO Nov. 21, 2024)

Trademark practitioners should be mindful that the USPTO trademark signature rule requiring the named signatory to enter his or her signature on a trademark document to be presented to the Office is a substantive rule, not a mere technical requirement; therefore, a failure of a named signatory to enter his or her signature on a trademark document potentially adversely affects a trademark applicants' and trademark registrants' intellectual property rights as well as the integrity of the USPTO trademark registration process.

Finally, practitioners are to be mindful that the practice of law before the USPTO, whether in patents, trademarks, or otherwise, involves a fiduciary relationship between the practitioner and their client. As such, while the incorporation of efficiencies and quality control mechanisms into a legal practice may be good business practices, efforts to commodify and produce work product at high volumes using non-practitioner assistants may pose ethical pitfalls. Thus, practitioners must always give full attention to their fiduciary responsibilities when structuring their business processes and must take extreme care to ensure that such processes do not supplant such fiduciary obligations to clients.

This action is the result of a settlement agreement between Mr. Ni and the OED Director pursuant to the provisions of 35 U.S.C. §§ 2(b)(2)(D) and 32, and 37 C.F.R. §§ 11.19, 11.20, and 11.26. Disciplinary decisions involving practitioners —including the many who have been disciplined for not complying with the USPTO trademark signature rules and their ethical obligations under the USPTO Rules of Professional Conduct connected with serving as counsel for foreign-domiciled trademark applicants— are posted for public reading at the Office of Enrollment and Discipline Reading Room accessible at: https://foiadocuments.uspto.gov/oed;

x. Based on Respondent's agreement to do so, Respondent waives all rights to seek

reconsideration of the Final Order under 37 C.F.R. § 11.56, waives the right to have the Final

Order reviewed under 37 C.F.R. § 11.57, and waives the right otherwise to appeal or challenge

the Final Order in any manner; and

y. the OED Director and Respondent shall each bear their own costs incurred to date and in

carrying out the terms of the Agreement and this Final Order.

Users, Choe, Tricia    Digitally signed by Users, Choe, Tricia
                       Date: 2024.12.19 14:39:30 -05'00'

_____                           _____
Tricia Choe                                         Date
Associate General Counsel for General Law
United States Patent and Trademark Office

on delegated authority by

Derrick L. Brent
Acting Under Secretary of Commerce for Intellectual Property and
Acting Director of the United States Patent and Trademark Office

20

**Certificate of Service**

I hereby certify the foregoing Final Order was mailed by first-class certified mail, return receipt requested, and transmitted by electronic mail, on this day to Respondent as follows:

Mr. Angus Ni
506 2nd Avenue, Suite 1400
Seattle, WA 98104

and

██████████████

 12/19/24                              /s/ Shane Walter                    
DATE                                  U.S. Patent and Trademark Office
                                      P.O. Box 1450
                                      Alexandria, VA 22313-1450